IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Terrence J. Sillsbury, ) | |
| ) | Civil Action No. 0:10-1674-RMG |
| Plaintiff, ) | |
| ) | |
| vs. ) | |
| ) | **ORDER** |
| Michael J. Astrue, Commissioner ) | |
| of the Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |
| _____ ) | |

Plaintiff filed this action *pro se*, pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of the Commissioner of the Social Security Administration regarding his claim for disability insurance benefits. In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., this matter was referred to a United States Magistrate Judge for pretrial handling. The Magistrate Judge recommended the decision of the Commissioner be affirmed. For reasons set forth below, the Court reverses the decision of the Commissioner and awards disability insurance benefits to Plaintiff.

**Legal Standard**

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of those portions of the Report to which specific objection is made, and may

accept, reject, or modify, in whole or in part, the recommendation of the Magistrate Judge, or recommit the matter to her with instructions. 28 U.S.C. § 636(b)(1).

The role of the federal judiciary in the administrative scheme established by the Social Security Act is a limited one. Section 205(g) of the Act provides that "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive . . .". 42 U.S.C. § 405(g). "Substantial evidence has been defined innumerable times as more than a scintilla, but less than a preponderance" of evidence. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). This standard precludes *de novo* review of factual circumstances that substitutes the Court's findings for those of the Commissioner. *Vitek v. Finch*, 438 F.2d 1157 (4th Cir. 1971).

Although the federal court's review role is limited, "it does not follow, however, that the findings of the administrative agency are to be mechanically accepted. The statutorily granted right of review contemplates more than an uncritical rubber stamping of the administrative action." *Flack v. Cohen*, 413 F.2d 278, 279 (4th Cir. 1969). Further, the Commissioner's findings of fact are not binding if they were based upon the application of an improper legal standard. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

Rules and regulations of the Social Security Administration mandate that the Commissioner make a systematic and careful review of the medical record and other evidence presented by the claimant, which includes a review and weighing of all relevant medical opinions and diagnoses. The Commissioner must evaluate each disability claim utilizing a five step process, which begins at Step One with a determination whether the claimant is still employed. 20 C.F.R. § 404.1520(a). If the claimant is not gainfully employed, the Commissioner must consider at Step Two the severity of all of the claimant's impairments. An impairment is deemed

"severe" if it "significantly limits" the claimant's "physical or mental ability to do basic work activities." § 1520(a)(ii), (c). The Commissioner must then consider at Step Three whether any of the severe impairments of the claimant meet or equal the listings in Appendix 1, which would automatically establish the claimant's disability. § 1520(a)(iii). If the claimant does not meet the requirements of the Appendix 1 listings, the Commissioner must at Step Four assess the claimant's residual functional capacity "based on all the relevant medical and other evidence." § 1520(a)(iv), (e). Assuming that the claimant is not able to perform his or her past relevant work, the Commissioner must assess at Step Five the claimant's residual functional capacity and age, education and work experience to determine whether there is other available work the claimant can perform. § 1520(a)(v), (g).

A claim of disability can be based on physical or mental impairments or a combination of both. The Commissioner is obligated to consider all "medically determinable impairments" and consider all medical evidence, opinions of medical sources and other evidence. 20 C.F.R. § 404.1545. "Medical opinions" include "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairments, including . . . symptoms, diagnosis and prognosis . . .". 20 C.F.R. § 404.1527(a)(2). Special consideration is given to a claimant's treating physician, and other factors considered by the Commissioner regarding the medical opinions of health providers include whether the provider examined the patient, the treatment relationship with the provider and whether the provider is a specialist in the field in which the opinion is given. § 1527(d)(1)-(6). The Commissioner is obligated to "always consider the medical opinions" available in the record. § 1527(b). *See also,* SSR 96-8P, 1996 WL 374184 at *6.

When making an application for disability insurance benefits, the claimant must establish his or her disability existed prior to the expiration of his or her insured status. *Johnson v Barnhart*, 434 F.3d 650, 655-656 (4th Cir. 2005). Evidence of disability need not be limited, however, to medical records and opinions produced during the period of insured status because subsequent medical records and opinions may be utilized to retrospectively diagnose disability during the insured period. *Wilkins v. Secretary*, 953 F.2d 93, 96 (4th Cir. 1987) ("This court has recognized that a treating physician may properly offer a retrospective opinion on the past extent of an impairment."); *Wooldridge v. Bowen*, 816 F. 2d 157, 160 (4th Cir. 1987) ("[M]edical evaluations made subsequent to the expiration of a claimant's insured status are not automatically barred from consideration and may be relevant to prove a previous disability.").

In addition to analyzing all relevant evidence in the record, including all medical opinions, the Commissioner has the duty to set forth and analyze in his decision all relevant evidence and to explain the weight given to all probative evidence. As the Fourth Circuit stated in *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984), "[w]e cannot determine if findings are unsupported by substantial evidence unless the Secretary explicitly indicates the weight given to all of the relevant evidence." For instance, in making the residual functional capacity assessment, the Commissioner's decision "must include a narrative discussion describing how the evidence supports each conclusion" and must explain any conflict between the residual functional capacity assessment and any opinion from a medical source. SSR 96-8P at *7. Further, in assessing the credibility of the claimant regarding his or her subjective complaints, the Commissioner's decision must "contain specific reasons for the finding on credibility, supported by the evidence in the case record . . . and must be sufficiently specific to make clear . . . the

weight the adjudicator gave to the [claimant's] statements and the reasons for that weight." SSR 96-7P, 1996 WL 374186 at *2. Moreover, "[i]t is not sufficient for the adjudicator to make a single, conclusory statement" that the claimant is not credible. *Id.*

## Factual Background

Plaintiff applied for Disability Insurance Benefits in January 2004, and ultimately asserted a disability onset date of March 1, 2002. (Tr. 19). Plaintiff claimed disability on the basis of a broad range of alleged ailments, which included leg and back problems, depression, hypertension, carpal tunnel syndrome, diabetes and chronic insomnia. (Tr. 61-2). The claim has traveled a protracted administrative course, which has included a 2005 hearing before an administrative law officer (ALJ), a subsequent ALJ decision denying Disability Insurance Benefits, a 2008 action by the Appeals Council remanding the case to the ALJ, a second hearing by video conference in 2009, a second ALJ decision on July 15, 2009 denying Plaintiff disability benefits and a May 6, 2010 decision of the Appeals Council denying a request for review. (Tr. 8-10, 19-29, 268-70, 275-84). The ALJ's decision became the Commissioner's decision upon the denial of Appeals Council review, and Plaintiff thereafter timely filed a request for judicial review with this Court.

Plaintiff produced voluminous evidence related to his longstanding complaints of cervical and lumbar spine abnormalities and related complaints of chronic, severe and radiating pain to his upper and lower extremities. The earliest reports of chronic pain were documented in the records of Plaintiff's treating physician, Dr. Jonathan Bornfreund, beginning in March 2002. (Tr. 159). Over the ensuing years, Dr. Bornfreund elaborately documented his patient's complaints of pain in his legs, feet, arms, hands, back and neck. (Tr. 137, 138, 139, 140, 141, 142, 143, 144,

146, 147, 148, 151, 152, 153, 154, 155, 157, 159).

After following and medicating Plaintiff's progressively worsening pain symptoms for several years, Dr. Bornfreund ordered an MRI of the cervical and lumbar spine on April 21, 2005. (Tr. 372). The study revealed marked cervical spine abnormalities, including "right posterior disc herniation at C5-6" that was "compressing the right ventral cord . . ." and "moderate diffuse posterior disc bulge" at C4-5 that was "effacing the ventral thecal sac." *Id.* Dr. Bornfreund subsequently prepared a report of September 28, 2005 in which he described Plaintiff's condition in his neck as involving "cervical degeneration and bulging discs" with pain not fully controlled with morphine. (Tr. 127). Dr. Bornfreund further opined that his patient has disc disease in the lower back which caused radiating pain down both legs. (Tr. 128). Dr. Bornfreund expressly cited the recently completed April 2005 MRI to support his diagnoses and conclusions. (Tr. 127, 128). He also completed a Multiple Impairment Questionnaire on September 28, 2005 in which he described Plaintiff's pain as "chronic", "radiating to all extremities", and "stabbing/ burning . . . with numbness." (Tr. 129-130). Dr. Bornfruend attributed Plaintiff's radiating pain to his arms to the cervical spine abnormalities and the radiating pain to the legs to arise to the lumbar spine abnormalities. (Tr. 130).

Dr. Bornfreund referred Plaintiff to a neurosurgeon, Dr. Brian Cuddy. In an evaluation of September 13, 2006, Dr. Cuddy noted the patient's "persistent neck and arm complaints" and expressly referenced the April 2005 MRI, which he concluded "demonstrates a right sided C5-6 disc herniation." (Tr. 416). A follow up MRI of September 22, 2006 ordered by Dr. Cuddy confirmed the 2005 MRI findings of disc protrusion at C4-5 with contact with the cord and right disc protrusion at C5-6. (Tr. 418).

After receiving the results of Dr. Cuddy's evaluation, Dr. Bornfreund prepared a second and revised report and questionnaire on November 7, 2006. He diagnosed the Plaintiff with chronic pain "significant enough to limit physical activities since the end of 2003" with "cervical degeneration" and "bulging discs." (Tr. 346). He described the patient's prognosis as "severe" and concluded "he is unable to do any physical work" at this time. (Tr. 347). Dr. Bornfreund opined that Plaintiff's "pain is worse w[ith] all physical activity" and that he could not stand or sit greater than one hour and could not lift or carry an object greater than 10 lbs. (Tr. 350-51). He referenced the earlier questionnaire, in which he had indicated that "there is some type of work which Terrance will be able to perform", and stated that "[a]fter looking back and reviewing patient's history, I'd have to change my 1st statement and say patient has had all the disability described in this questionnaire and has been referred to a specialist for treatment." (Tr. 128, 353).

Plaintiff was also seen by a treating neurologist, Dr. Jeff Benjamin, in 2007 and 2008. Dr. Benjamin reviewed the 2005 MRI and noted that "the reality is his MRI shows some lateral neuroforaminal encroachment up to the right at C5-6." (Tr. 395). Dr. Benjamin noted that the 2006 MRI "showed C4-C5 and C5-C6 disease again." (Tr. 404). Another MRI ordered by Dr. Benjamin and performed on January 17, 2008 again confirmed Plaintiff's same chronic spinal abnormalities at C4-C5 and C5-C6. (Tr. 398).

In Plaintiff's 2005 administrative hearing before the ALJ, he described severe symptoms associated with his spinal cord abnormalities. These included Plaintiff's hands going numb when he attempted to shave, "stabbing pain" in his shoulder blades, and an inability to hold his infant child for feeding. (Tr. 477, 479, 483). In the 2009 administrative hearing, which was held after remand from the Appeals Council, Plaintiff described his upper extremity pain as feeling like

"somebody taking a dull screwdriver and trying to cram it between my shoulder blades . . .". (Tr. 512). He also described himself as dependent on his wife to tie his shoes and dependent on his parents to provide his family shelter and support because he was physically unable to work. (Tr. 474, 481, 510).

The ALJ gave minimal weight to this significant body of medical evidence of severe spinal pathology, finding that Plaintiff's cervical and lumbar spine abnormalities did not meet the rather non-demanding requirements to show a "severe" impairment under Step Two. (Tr. 22). The ALJ gave "limited weight" to opinions of Plaintiff's longstanding treating physician, Dr. Bornfreund, allegedly because his "assessment was devoid of any explanation, rationale, clinical findings or reference to objective testing." (Tr. 26). Specifically, the ALJ found no radiographic support for Dr. Bornfruend's spinal diagnoses, noting that while the doctor referred to an MRI showing degenerative disc disease "the actual reports are not included in the record." (Tr. 26). In fact, the 2005 MRI is very much in the record (Tr. 372), as are the confirmatory followup MRIs of 2006 and 2008 (338, 397). The reports interpreting these three MRIs, all issued by board certified radiologists, were not addressed by the ALJ.

The ALJ also gave "minimal weight" to the opinions of Plaintiff's treating neurologist, Dr. Benjamin, and failed to refer to the opinions of Plaintiff's treating neurosurgeon, Dr. Cuddy. (Tr. 26-27). No explanation was given for failing to consider and weigh the opinions of Dr. Cuddy. Dr. Benjamin's opinions were given "minimal weight" because his assessments were "many years . . . after the claimant's date last insured" of December 31, 2005 and were "at best, marginally relevant to the time period considered for this decision." (Tr. 27). Both specialist treating physicians expressly referenced the 2005 MRI in their subsequent workups and

diagnoses, specifically finding that the condition was chronic and longstanding. (Tr. 395, 404, 416).

Instead of according meaningful weight to the opinions of Plaintiff's treating physicians, the ALJ elected to rely upon and give "substantial weight" to a consulting physician, Dr. Regina Roman, who examined Plaintiff on a single occasion on September 14, 2004. (Tr. 27). Dr. Roman ordered only plain x-rays of Plaintiff's lumbar spine and knees but neither ordered nor reviewed any radiographic evaluation of Plaintiff's cervical spine. (Tr. 234-37). Dr. Roman concluded that Plaintiff had an essentially normal examination, although she did document the patient's complaints of neuropathy consistent with significant cervical disc disease. This included "a burning sensation of pins and needles . . . in both hands . . .", "bilateral numbness and tingling in both wrists", and "numbness and tingling in both hands, and this has not really changed." *Id.* Further, while the consulting evaluation is titled a "Comprehensive Orthopedic Examination", the Court takes judicial notice of the official listing of Dr. Roman on the South Carolina Board of Medical Examiners' website, which indicates that she is board certified in internal medicine and occupational medical and not in orthopedics. (See, South Carolina Department of Labor, Licensing and Regulation website, www.llr.state.sc.us/pol/medical/) )(last visited November 17, 2011).

The ALJ-- according "substantial weight" to the opinion of Dr. Roman, the consulting non-specialist physician; "limited weight" to the opinion of Plaintiff's longstanding treating physician, Dr. Bornfreund; "minimal weight" to the opinions of Plaintiff's treating neurologist, Dr. Benjamin; and no weight or any reference to the opinions of Plaintiff's treating neurosurgeon, Dr. Cuddy, or the three radiologists who interpreted the 2005, 2006 and 2008

-9-

MRIs of the cervical spine-- concluded that Plaintiff did not meet the standards for an award of disability insurance benefits. (Tr. 19-29). It is from this opinion that Plaintiff seeks judicial review.

## Analysis

The statutory and regulatory scheme of the Social Security Act anticipates that the Commissioner will make a systematic and careful review of the claimant's medical record. This includes a review of all objective radiological and laboratory studies and consideration of all relevant medical opinions. 20 C.F.R. 404.1527(b). Further, the opinions of treating physicians are to be given special consideration. If the opinions of a treating physician regarding the "nature and severity" of the claimant's impairments are "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record", such opinions will be given "controlling weight". § 1527(d)(2). Where "controlling weight" is not accorded a treating physician's opinion, the Commissioner is required to consider such opinions in light of the factors set forth in § 1527(d)(2)(i) and (ii), which include the length, nature and extent of the treatment relationship, the supportability of the opinions in the medical record and whether the treating physician is a specialist. § 1527(d)(2)(i ) and (ii), (3), (5). The Commissioner pledges to "always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." § 1527(d)(2). Further, a claimant may offer the "retrospective opinion" of treating physicians and other medical experts regarding a claimant's past period of impairment even if such opinion is offered subsequent to the expiration of the claimant's insured status. *Wilkins v. Secretary*, 953 F.2d at 96; *Wooldridge v. Bowen*, 816 F.2d at 160.

Assuming that the Commissioner adheres to his or her obligations under the applicable Social Security statutes, regulations and rules, the courts provide a highly deferential standard of judicial review of the decision of the Commissioner. Under such circumstances, if the decision of the Commissioner is supported by substantial evidence, such decision "shall be conclusive." 42 U.S.C. § 405(g). As this case so aptly demonstrates, however, where the ALJ does not consider all relevant medical evidence, fails to accord treating physicians' opinions the weight guaranteed by controlling regulations and/or fails otherwise to following controlling legal standards, judicial deference is inappropriate. The Court will discuss below various striking deficiencies in the ALJ's decision which, individually and collectively, mandate reversal of the Commissioner's decision and address the appropriate remedy after over seven years of administrative processing of this claim.

<u>Failure to Consider the MRI's and Reports of 2005, 2006 and 2008</u>

The ALJ, in the course of setting forth his basis for rejecting the opinions of Plaintiff's longstanding treating physician, Dr. Bornfreund, found that the MRI report referenced in his opinions is "not included in the record." (Tr. 26). This is, as stated previously, simply untrue. The MRI of April 21, 2005 is clearly in the record and is highly material to addressing Plaintiff's claim for disability benefits. (Tr. 372). Indeed, the report interpreting the MRI, prepared by Dr. Michael Faulstich, a board certified radiologist, describes the presence of a herniated disc, advanced degenerative disc disease and cord involvement. This MRI and report provide objective radiographic evidence in support of the opinions of Dr. Bornfreund and the other treating physicians, all whose opinions were given minimal or no weight by the ALJ. The failure of the ALJ to consider the 2005 MRI and report is sufficient, standing alone, to mandate reversal

of the Commissioner's decision.

The ALJ also failed to consider the 2006 and 2008 MRIs and reports, which confirmed the presence of the disc herniation, disc bulging and cord involvement first documented in the 2005 MRI. (Tr. 338, 397). These studies and reports were confirmatory of Plaintiff's longstanding, chronic cervical spine impairments and supportive of the opinions of Drs. Bornfreund, Cuddy and Benjamin. The failure of the ALJ to consider this highly probative and relevant medical evidence also mandates reversal of the Commissioner's decision.

<u>Failure to Properly Weigh the Opinions of the Treating Physicians</u>

The ALJ's decision to give only "limited weight" to the opinions of Dr. Bornfreund does not remotely satisfy the standards set forth in § 1527(d)(2). First, the ALJ found that Dr. Bornfreund's assessment was "devoid of any explanation, rationale, clinical findings or reference to objective testing." (Tr. 26). This dubious finding overlooks the 2005 MRI and report, the numerous references in Dr. Bornfreund's office records consistent with significant cervical spinal cord impairment and the physician's detailed reports and questionnaire responses which are included in the record. (Tr. 127-135, 137-144, 146-148, 151-155, 157, 159, 372). The ALJ also found that none of the medical records or reports contained in the record supported Dr. Bornfreund's opinions regarding the presence of neck and back pain and degenerative disc disease (Tr. 26). This finding is also clearly unsupported by the record. In addition to the references to the record cited above, the record contains additional MRI studies and reports of 2006 and 2008 and the records and opinions of two specialist treating physicians, Dr. Cuddy and Dr. Benjamin, demonstrating the presence of overwhelming evidence of degenerative disc disease and neck and back pain. (338, 344, 346-353, 387-397). The Court finds that there is not

substantial evidence in the record to support the ALJ's finding that Dr. Bornfreund's assessment was "devoid of any explanation, rationale, clinical findings or reference to objective testing." (Tr. 26).

A review of the full record in this matter reveals that the Commissioner should have accorded Dr. Bornfreund's opinions controlling weight under the standards set forth in § 1527(d)(2). First, Dr. Bornfreund had a long standing treatment relationship with Plaintiff. Second, his opinions regarding the nature and severity of Plaintiff's impairments were well supported by his own clinical evaluations, three MRI's and the evaluations and opinions of two treating specialist physicians. Third, his opinions regarding Plaintiff's severe cervical spine pathology is not inconsistent with "other substantial evidence in . . .[the] record." *Id.* The Court finds that the consulting evaluation of Dr. Roman, which involved no radiographic imaging or other diagnostic testing of the cervical spine, does not constitute substantial evidence relating to Dr. Bornfreund's opinions regarding Plaintiff's cervical spine disease.

The Court similarly finds that the opinions of Drs. Cuddy and Benjamin, both treating specialist physicians, are also entitled to controlling weight. They both examined Plaintiff on multiple occasions, ordered and reviewed diagnostic studies and applied their specialized expertise in neurosurgery and neurology in forming their opinions regarding Plaintiff's severe cervical spine disease. (Tr. 344, 387-397, 404-405, 416, 419-421). Their opinions are well supported in the record with multiple diagnostic studies and clinical evaluations and there is no inconsistent substantial evidence relating to their opinions regarding Plaintiff's cervical spine impairments.

The ALJ accorded only "minimal weight" to the opinions of Dr. Benjamin on the basis

that his treatment was remote in time from Plaintiff's last date of insured status (December 31, 2005) and "at best, marginally relevant to the time period considered for this decision." (Tr. 27). The opinions of Dr. Benjamin were based on assessments conducted in 2007 and 2008 (which the Court finds as hardly remote in time) and expressly referenced the findings from the 2005 MRI as corroborating his diagnosis of advanced cervical spine abnormalities. (Tr. 387-397, 404-405). The Court finds the ALJ's failure to properly consider this relevant evidence of a treating specialist physician inconsistent with well established Fourth Circuit precedent that consideration of medical opinions and studies performed after the expiration of the insured period is proper when relevant to establish the claimant's disability during his insured status. *Wilkins v. Secretary*, 953 F.2d at 96; *Wooldridge v. Bowen*, 816 F.2d at 160.[1]

<u>Failure to Find Plaintiff's Cervical Spine Abnormalities Constituted a "Severe Impairment"</u>

As part of the five step sequential evaluation process set forth in 20 C.F.R. § 404.1520, the ALJ was required to determine whether Plaintiff had any "severe impairments." § 1520(a)(4)(ii). A "severe impairment" is defined as one which "significantly limits your physical or mental ability to do basic work activities." § 1520(c). This is normally considered a rather low threshold for a claimant to satisfy in a disability evaluation. Indeed, the ALJ found that Plaintiff had severe impairments of diabetes, depression, anxiety and carpal tunnel syndrome. (Tr. 21). Apparently as a result of the ALJ overlooking the 2005, 2006 and 2008 MRI's and reports and providing minimal to no weight to Plaintiff's three treating physicians for his cervical spine disease, the ALJ concluded that the "alleged" neck and back impairment "no

---

[1] The ALJ offers no justification for failing to consider and weigh the opinions of Dr. Cuddy, Plaintiff's treating neurosurgeon.

more than minimally affect[ed] the claimant's ability to perform work related activity." (Tr. 22).

The record contains overwhelming evidence that establishes that Plaintiff suffered from a "severe impairment" involving his cervical spine. This is supported by multiple MRI studies and the observations, assessments and opinions of Plaintiff's three treating physicians. (Tr. 127-136, 338, 344, 346-354, 372, 387-397). This is further corroborated by the testimony of Plaintiff. (Tr. 477-483, 512-515). Since the Court has found the opinions of Plaintiff's three treating physicians, Drs. Bornfreund, Cuddy and Benjamin, to be controlling regarding the nature and severity of Plaintiff's cervical spine impairment, the Court further finds that Plaintiff's cervical spine impairment to be "severe" under § 1520(a)(4)(ii) and (3). The Court also finds that there is not substantial evidence in the record to support the ALJ's findings that Plaintiff's cervical spine impairment is only a "slight abnormal[ity] and has "no more than a minimal effect on the claimant's ability to work." (Tr. 22)

<u>Failure to Determine if Plaintiff's Severe Cervical Spine Impairment Satisfied</u>

<u>One of the Listings of Impairments Under Appendix 1</u>

Once the Commissioner determines that a claimant's impairment is severe, the next step (which is known as Step Three) is to determine if the impairment satisfies one of the listed impairments under Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant has an impairment listed in Appendix 1 which meets the duration requirements, the claimant will be found disabled without considering such additional factors as age, education or work experience. § 1520(d). Since the ALJ found that Plaintiff's cervical spine abnormalities were not a "severe impairment" under Step Two, the ALJ never addressed the Step Three determination.

Appendix 1 contains a specific listing for "disorders of the spine". A claimant will satisfy

this listing if he or she demonstrates the following:

1. A specific spine disorder, including "herniated nucleus pulposus" and "degenerative disc disease", that results in a compromise of the spinal cord or nerve root;

2. Evidence of nerve root compression that can be demonstrated by "neuro-anatomic distribution of pain"; and

3. Sensory or reflex loss. 20 C.F.R. Part 404, Subpart P, Appendix 1, §1.04(A).

The record overwhelmingly establishes the presence of an impairment that satisfies the disorders of the spine listing under Appendix 1. First, radiographic findings by two board certified radiologists from the 2005 and 2008 MRI reports explicitly describe the presence of a herniated disc at C5-C6 that encroaches on the spinal cord. (Tr. 338, 397). The 2005 MRI report describes the herniated disc at C5-C6 "is compressing the right ventral cord at C5-C6 level." (Tr. 372). Similarly, the 2008 MRI states that the herniated disc at C5-C6 was "contacting and flattening the right side of the cervical cord." (Tr. 397). This is also the finding of Dr. Cuddy, who reviewed the 2005 MRI as part of his neurosurgical evaluation in 2006. (Tr. 344). Further, both Dr. Bornfreund and Dr. Cuddy diagnosed the presence of degenerative disc disease based upon the findings of the 2005 MRI. (Tr. 348, 404). The Court has found the opinions of the treating physicians to be controlling. Second, the record clearly demonstrates the presence of nerve root compression resulting in neuro-anatomic distribution of pain. Plaintiff's treating physicians consistently described Plaintiff's upper extremity pain in his arms, wrists and hands as radiating from his cervical spinal abnormalities. (Tr. 129-130, 348-354, 404-405, 420-421). Third, the record overwhelmingly establishes significant sensory loss from Plaintiff's cervical spine abnormalities, generally described as numbness and weakness in Plaintiff's upper

extremities. (Tr. 147, 151, 349, 478, 479, 483).

Based upon this well documented medical record dating back since at least the end of 2003, multiple MRI studies, assessments by three treating physicians whose opinions have been determined to be controlling and the Plaintiff's sworn testimony, the record overwhelmingly establishes that Plaintiff's severe cervical spinal condition, which includes a herniated disc that compresses the spinal cord, meets the requirements of the listed impairment of "disorders of the spine" set forth in Appendix 1, § 1.04(A). Based upon the record in this matter, the Court concludes that a finding to the contrary by the ALJ on remand would not be supported by substantial evidence. Therefore, as a matter of law, the Court finds that Plaintiff is entitled to disability insurance benefits.[2]

## Plaintiff's Remedy

Upon determining that the Commissioner's decision must be reversed, a district court has the option of remanding the decision to the Commissioner or awarding benefits to the Plaintiff. 42 U.S.C. § 405(g). It has been this Court's practice to remand decisions to the Commissioner

---

[2] In light of the fact that the Court has determined that Plaintiff's cervical spine impairments meet the listing for disorders of the spine at Step Three, it is not necessary for the Court to address further the significant lumbar spine abnormalities revealed in the 2005 MRI and diagnosed by Dr. Bornfreund. (Tr. 127-136, 138, 142, 144, 148, 155, 157, 346-354). Although the lumbar spine impairment does not involve a herniated disc or documented cord involvement, such as found in the cervical spine abnormalities, there is well documented evidence of degenerative disc disease, radiating pain to the lower extremities and sensory loss. Thus, the findings of the ALJ that lumbar spine abnormality is "slight" and has no more than a "minimal effect on claimant's ability to work" are not supported by substantial evidence in the record. (Tr. 22). The lumbar spine abnormality does not, however, appear to meet any listing at Step Three and, in the absence of the Court's findings regarding the cervical spine impairment meeting the Appendix 1 listing, the Court would have remanded the lumbar spine impairment to the Commissioner to reevaluate his Step Two findings and to further evaluate the Plaintiff's claim under the five step procedure set forth in § 1520.

rather than granting an award. It is well recognized, however, that where the record is fully developed and it is clear that the ALJ would be required to award benefits on remand, an award of disability insurance benefits by the district court is appropriate. *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004); *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994); *Williams v. Commissioner*, 104 F.Supp.2d 719, 721 (E.D. Mich. 2000). This is particularly true where there has been a significant lapse of time in the administrative processing of the claim, which has placed a heavy financial burden on the disabled claimant. *Benecke v. Barnhart*, 379 F.3d at 595; *Holohan v. Massanari*, 246 F. 3d at 1210; *Podedworny v. Harris*, 745 F.2d 210, 223 (3rd Cir. 1984).

The Court finds that this matter, which has now been administratively processed since January 2004 and has been up through the administrative process twice, has a fully developed record with overwhelming support for Plaintiff's entitlement to disability insurance benefits. Plaintiff has not worked during the entire pendency of this administrative claim and essentially lives on the charity of his parents, who provide shelter and support for Plaintiff and his wife and children. (Tr. 474, 510). The Social Security Act was designed to provide support for disabled claimants such as Plaintiff and the continued denial of benefits for which he is clearly entitled is neither just nor necessary.

The final issue for the Court's determination is the onset of Plaintiff's disability. While Plaintiff asserts an onset date of March 1, 2002, Dr. Bornfreund offered the opinion that Plaintiff's pain was "significant enough to limit physical activities since the end of 2003." (Tr. 346). There is substantial support in the medical record to support a January 1, 2004 onset date, and the Court finds Dr. Bornfruend's opinion on this matter should be given controlling weight

under § 1527(d)(2). (Tr. 147, 151, 353). Therefore, the Court finds that the Plaintiff's onset date for disability is January 1, 2004.

## Conclusion

Based upon the foregoing, the Court hereby reverses the decision of the Commissioner, pursuant to sentence four of 42 U.S.C. § 405(g), and awards Plaintiff disability insurance benefits with an onset date of January 1, 2004.

AND IT IS SO ORDERED.

Richard Mark Gergel
United States District Court Judge

November 17 2011
Charleston, South Carolina